FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 02 2014 ★

BROOKLYN OFFICE

JV3_Complaint1.Doc

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------

| | |
|---|---|
| **JACOB'S VILLAGE FARM CORP. and JACOB YUSIFOV,**<br><br>                                     **Plaintiffs,**<br><br>    -against-<br><br>**NAUM YUSIFOV a/k/a Nick Yusifov, LANA YUSIFOV a/k/a Svetlana Beyn, NICK'S PRODUCE CORP., JOHN MONTES, and JOHN DOE # 1-10, persons being unknown to Plaintiffs who knowingly participated with any of the named defendants in the activities alleged herein,**<br><br>                                    **Defendants.** | Index No.       / 2014<br><br>**CV 14  4109**<br><br>**COMPLAINT**<br><br>**Jury Demand**<br><br>CHEN, J.<br>GO, M.J. |

------------------------------------------------------------------

1.     Plaintiffs, **Jacob's Village Farm Corp.** ("Jacob's Corp.") and **Jacob**

Yusifov ("Jacob") (and collectively, the "Plaintiffs") bring this action against the

above-captioned defendants for the misappropriation of the PACA trust fund and

other assets of Plaintiff Jacob's Corp., (a) by unauthorized writing of checks and

making wire transfers from the bank account of Jacob's Corp. to themselves; (b) by

making payments from Jacob's Corp. bank account to third persons for the benefit of

Defendants; (c) by ordering produce in the name of Jacob's Corp. and diverting and

reselling the produce and causing the suppliers to make claims against Jacob's Corp.

instead of the Defendants, as set forth more fully below; and (d) by misappropriation

or conversation of produce, produce proceeds and other assets of Jacob's Corp during the period from 2009 to 2013.

## I. Jurisdiction and Venue

2.     Subject-matter jurisdiction is vested in this Court pursuant to the Perishable Agricultural Commodities Act ("PACA"), specifically 7 U.S.C. § 499(c)(b)(2) and 7 U.S.C. § 499c(c)(5)(i), § 2(c) of the Robinson-Patman Act, 15 U.S.C. § 13(c), 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

2.     Personal jurisdiction of this Court over the Defendants exists in that each of the Defendants regularly conducts or transacts business within the Eastern District of New York, and that the alleged activities of the Defendants occurred within this District.

3.     The Court has supplemental jurisdiction over the Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a).

4.     Venue in this District is based on 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this District; also the Plaintiffs and Defendants have their principal places of business in this District, and Defendants Nick and Lana live in the District.

## II. Parties

5.     Plaintiff, **Jacob's Village Farm Corp.** ("Jacob's Corp.) is a New York corporation and PACA-licensed dealer and wholesaler, in the business of purchasing produce for resale, with offices at 390 Ocean Parkway - Apt. 4A, Brooklyn, New York 11218-4678.

6.     Jacob's Corp. buys and resells wholesale quantities of perishable agricultural commodities ("produce") in interstate commerce, and therefore is a "dealer" pursuant to § 499a(b)(6) of PACA.  Jacob's Corp. has been a licensed PACA dealer since 2009.

7.     Plaintiff, **Jacob Yusifov** ("Jacob"), with his offices and residence at 390 Ocean Parkway - Apt. 4A, Brooklyn, New York 11218-4678, is the sole shareholder and a principal of Jacob's Corp.  Until mid-2013, Plaintiffs were dependent on Jacob's brother (Defendant Naum Yusifov a/k/a Nick Yusifov) and Nick's wife, Defendant Lana Yusifov, for translating Jacob's produce orders from Hebrew and Russian (Jacob's native languages) to English, and communicating the produce orders in English to the suppliers and customers of Jacob's Corp., writing checks and making wire transfers in the name of Jacob's Corp., and in maintaining the books and records for the Plaintiffs.  Jacob does not read, write or understand English except very basic spoken English.  Jacob does not read or write to any significant extent in his native languages.

8.     Defendant, **Naum Yusifov a/k/a Nick Yusifov** ("Nick"), brother of Jacob, with his offices and residence in a single-family home at 2549 E. 28th Street, Brooklyn, New York 11235.  By reason of his activities as alleged in this Complaint Nick was functioning, at all relevant times, as an unauthorized principal of Jacob's Corp. and as a fiduciary of Jacob's Corp. PACA trust and other assets.

9.     On or about July 29, 2013, without telling Jacob, Nick incorporated Nick's Produce Corp. ("Nick's Corp.") and obtained a PACA license for it, and became its principal. Upon information and belief, Nick's Corp. was financed from inception through August, 2013 or later with produce and produce proceeds misappropriated by Defendants from the Jacob's Corp. PACA trust and other assets.

10.   Defendant, **Nick's Produce Corp**. ("Nick's Corp.), a New York corporation, incorporated by Defendants Nick and Lana for the purpose of continuing their unlawful misappropriation and diversion of the PACA trust fund assets held by Jacob's Corp. and Jacob.

11.   Nick's Corp. became a PACA licensee (#20131189) on August 8, 2013, with Nick named as its principal.

12.   Defendant, **Lana Yusifov a/k/a Svetlana Beyn** ("Lana"), wife of Nick, with her offices and residence at 2549 E. 28th Street, Brooklyn, New York 11235. Lana knowingly participated with Nick and Nick's Corp. in each of the activities alleged herein.  Lana's activities including but were not limited to (a)

4

writing unauthorized checks and sending unauthorized wire transfers drawn on the Jacob's Corp. bank account, (b) ordering unauthorized produce for delivery to or for the benefit of Nick's Corp., (c) telling the produce sellers that they should look to Jacob's Corp. for payment when Jacob's Corp. received none of the produce and none of the proceeds of sale of such produce, and (d) upon information and belief, assisting Nick in the conversion of produce, proceeds and other assets held in PACA trust by Jacob's Corp.

13. The total amount of money and produce diverted and misappropriated by the Defendants from the Plaintiffs, from 2009 through 2013, is more than $1,000,000, all of which is PACA trust assets (a significant part of which is required to pay the defrauded suppliers, who thought they were dealing with Jacob's Corp. when in fact they were not).

13. Defendant **John Montes a/k/a John Ruiz Montes** ("Montes"), d/b/a Monte's Brokerage, with his residence at 3289 Spanish Bayonet Drive, Hernando Beach, Florida 34607-3526. Montes participated with Nick, Lana and Nick's Corp. in the misappropriation and diversion of the Plaintiffs' PACA trust fund and other assets in at least two ways: (1) falsely claiming to produce suppliers that he was ordering on behalf of Plaintiffs and having the shipments be directed to someone other than Jacob's Corp. to enable the resale and conversion of sale proceeds to take place; and (2) misappropriation and diversion of produce actually ordered by or for

Jacob's Corp. and received by it, with subsequent resale and diversion of the sale proceeds.

14.   Although claiming falsely to produce sellers he was a "broker" and agent for Jacob's Corp., Montes actually was an employee of Nick's Corp. (and later was advertised as such by Nick and Nick's Corp. in the produce industry Blue Book).

14A.   Upon information and belief, the activities of Montes began sometime between March and June, 2013 (the "Montes Period").

15.   Defendants **John Doe ## 1-10** are persons unknown to Plaintiffs who knowingly participated with any of the named Defendants in the activities alleged herein.  Upon information and belief, Defendants John Doe ## 1-10 were working with Nick and Lana prior to the Montes Period in the misappropriation, diversion and conversion of Plaintiffs' PACA trust and other assets.

### III. Additional Facts

16.   During February, 2005, Jacob caused Jacob's Corp. to be incorporated, and at all relevant times was its sole shareholder.

17.   Jacob provided all of the capital to start up the PACA dealer business of Jacob's Corp., amounting to about $100,000, which was contributed from inception of Jacob's Corp. (in 2005 through April, 2012).

18.   Jacob's Corp. was issued its first PACA license in 2005, which was renewed from time to time and most recently on April 24, 2012 (No. 20120907) in the name of Jacobs Village Farm Corp. (with Jacobs spelled without the apostrophe).

19.   At all relevant times from 2005 to the present, Jacob's Corp. was and is in the business of wholesale purchase and resale of produce as a PACA dealer in interstate commerce.

20.   All of the proceeds of sale of produce (other than produce and sales revenue diverted by any of the Defendants) was commingled in a moving (i.e., non-segregated) trust fund consisting mainly of the produce as received by Jacob's Corp. and the proceeds of resale of such produce deposited in a bank account in the name of Jacob's Corp.

21.   Nick, brother of Jacob, assisted Jacob in reading and orally translating occasional commercial documents written in English into Jacob's native (spoken) languages of Hebrew and Russian; in ordering produce from suppliers or through produce brokers for Jacob's Corp. in accordance with verbal instructions in Hebrew or Russian from Jacob; in instructing suppliers and shippers where the ordered produce was to be shipped; in writing checks to suppliers and brokers in payment for the ordered produce after it was received; in receiving Jacob's Corp. bank statements directly from the bank to Nick's office and residence (which in 2009 became the

current address); and in maintaining the books and records for the business of Jacob's Corp. (hereinafter, the activities are referred to as the "Authorized Activities").

22.    Lana assisted Nick in the Authorized Activities by Nick, and at all times was aware when Nick was also engaged in the unlawful misappropriation and diversion of the Plaintiffs' PACA trust fund and other assets.

23.    The Authorized Activities took place over the period from inception of the business in 2005 through August, 2013, a period of about 8 years, and during this period up until August, 2013, Jacob had not seen any of the Jacob's Corp. bank statements and was unaware how much or little was in the account.

24.    Jacob spent full time working, as the principal and sole shareholder, in the PACA wholesale produce business of Jacob's Corp., involving an estimated average of about 2-3 transactions per week, averaging about $25,000 per transaction.

25.    Nick, an individual of substantial wealth, spent about 1-2 hours per week with his Authorized Activities, and was supposedly performing these activities on behalf of his brother, Jacob, without any compensation or interest in the business, other than reimbursement of whatever expenses he might incur on behalf of Jacob's Corp.

26.    Most of the checks and wire transfers were prepared and sent by Nick or Lana (including more than $253,000 in cash payments to themselves); most of the payments to Jacob's Corp. were received and supposedly deposited in a Jacob's Corp.

bank account by Nick and Lana; for most of the period between 2005 and June, 2013, all of the bank statements for Jacob's Corp. were mailed by the bank directly to Nick, at his then current address.

27.   Nick did not send or show copies of the bank statements to Jacob or to Jacob's Corp. and Plaintiffs were not aware of the low bank balances (in comparison to what Jacob thought his business had produced), particularly because of the lag between produce order and payment but mainly because of the lack of access to the bank statements.

28.   Starting at an unknown date sometime during or after 2005 (but no later than July 31, 2009, Nick, with the knowledge and assistance of Lana, started diverting and misappropriating PACA trust fund and other assets of the Plaintiffs, mainly through the unauthorized writing of checks and wire transfers to Nick and, upon information and belief, to others, for the benefit of Nick or Lana and, upon information and belief, through the ordering and diversion and misappropriation of produce, for resale by Nick and/or Lana or Montes for the benefit of Defendants.

29.   During June, 2013, when Jacob obtained a copy of the bank statements from the bank, Jacob learned that Nick and Lana had written unauthorized checks and had sent wire transfers to themselves or others (for the benefit of Nick and/or Lana) amounting to more than $500,000, including a check # 557 (dated July 31, 2009) in the amount of $50,000 as a down payment for the one-family building

that Nick, Lana and Nick's Corp. now use as their home and offices ("Nick's Property # 1"). Upon information and belief, most if not all of the money and other assets used to maintain Nick's Property #1 came from Plaintiffs' PACA trust and other assets, and represents a commingling of Plaintiffs' PACA trust assets entitling Plaintiffs to be awarded title to Nick's Property as part of the relief requested by Plaintiffs herein.

30. A total of an estimated 500 checks and wire transfers (including more than $253,000 in cash transfers) were unauthorized, ranging from under $1,000 to as much as $50,000, although the total amount of the misappropriation for the 9-year period starting in 2005 cannot be ascertained without an accounting.

30A. Upon information and belief, the statute of limitations tolled from inception to June, 2013 because of the fiduciary relationship of the Defendants in their conversion of PACA trust assets, the fiduciary relationship of Nick and Lana in their assistance to Jacob, and the secrecy and way in which the unlawful misappropriation, diversion and conversion took place.

31. On or before August 8, 2013, Nick had started his own PACA-licensed business of Nick's Produce Corp. (defined as "Nick's Corp."), and hired Monte as an employee of Nick's Corp.

32. Upon learning of this diversion and misappropriation of the Plaintiffs' PACA trust fund and other assets, Jacob went to the bank on or about June 30, 2013

and closed the bank account and opened up a new bank account, to attempt to stop the systematic looting of Jacob's Corp. by Nick and Lana and (upon information and belief) John Montes.

33. This did not stop them, however. Nick and Lana, through Nick's Corp. and Montes, started (or continued) to make unauthorized orders of produce in the name of Jacob's Corp. with delivery directly to Nick's Corp. or to others for the benefit of Nick's Corp. and the other Defendants.

34. Starting in June, 2013, Defendants, including Nick, Lana, Nick's Corp. and Monte placed a series of unauthorized produce orders in the name of Jacob's Corp. with delivery to Nick's Corp. or recipients for the benefit of Nick's Corp., with the sellers falsely believing that Jacob's Corp. had ordered the produce, some or all of which sellers then sought payment from Jacob's Corp. and Jacob in a series of PACA industry claims, informal PACA claims, formal PACA claims, and PACA lawsuits.

35. The total number and amount of such unauthorized transactions is not known by Plaintiffs with certainty at this time but includes the following unauthorized transactions (amounting to $87,989):

A. Informal PACA complaint #E13-288/289 by Frutival USA Inc. ($4,160) and Fresh Imports Int'l LLC ($12,300) in the total amount of $16,460, dating back to June 22, 2013;

11

B.     Formal PACA complaint #E13-296 by Michael Cutler Company in the amount of $33,120.80, dating back to June 28, 2013;

C.     Blue Book complaint File # 203530 by C & A Truck Brokerage, Inc., in the amount of $8,680, dating back to June 28, 2013;

D.     Blue Book complaint File # 109558 by Mosley Truck Brokerage, Inc., in the amount of $4,870, dating back to July 18, 2013;

E.     Blue Book complaint File # 155967 by Lee Childress Farms, in the amount of $3,900, dating back to July 18, 2013;

F.     Blue Book complaint File # 30701 by Bonita Truck Brokers, Inc.(and) in the amount of $13,975, dating back to July 19, 2013; and

G.     Informal PACA complaint #E-14-145 by Frank Jr. Farms LLC amounting to $7008, dating back to August 8, 2013.

36.    None of the transactions in the preceding paragraph and subparagraphs was known to or authorized by the Plaintiffs, and each of the transactions involved the interstate ordering of produce by Monte in the name of Jacob's Corp. with delivery to and resale by or for the benefit of Nick's Corp. and/or Nick.

37.    Upon information and belief, Nick's Corp. and/or Nick and Lana made unlawful kickbacks or commercial bribes from the produce or the sale proceeds

(part of the Plaintiffs' PACA trust assets) to Monte to encourage him to participate in the unlawful diversion and misappropriation of Plaintiff's PACA trust fund assets.

38. Any such kickback or commercial bribes paid to Monte were a violation of § 2(c) of the Robinson-Patman Act, 15 U.S.C. § 13.

### IV. Damages

39. The activities of the Defendants as alleged above have made the Plaintiffs financially unable to make payment for the unauthorized transactions resulting in substantial litigation costs to defend against the claims.

40. The unauthorized claims against the Plaintiffs are known or available information throughout the PACA community causing the Plaintiffs to lose business and be substantially less able to purchase produce on a credit basis.

40A. Nick is telling other PACA dealers and wholesalers in Brooklyn and in other markets throughout the United States that they should not deal with Plaintiff because Plaintiffs have failed to pay for the transactions described in sub-paragraphs A-F of ¶ 35 above (i.e., the Unauthorized Transactions wrongfully created by Nick and the other Defendants), causing a substantial loss in business for Plaintiffs.

41. Plaintiffs have lost the substantial profitability of their PACA dealer produce business, amounting to more than an estimated $250,000 per year, when adjusting for the unauthorized transactions and the unlawful diversion and misappropriation of PACA trust fund and other assets. The precise amount of the

loss is not known at this because the books and records have been in the possession of Nick and Lana and because of their alleged activities it is doubtful that any accurate books have been kept to show the profitability of the business but for the misappropriation taking place by Defendants.

42.   The total loss and damages to Jacob's Corp. is in excess of $1,000,000, with the precise amount to be proven at the time of trial.

43.   The loss to Jacob is the cost of defending himself as principal of Jacob's Corp., a PACA licensee, against the unauthorized claims; the threatened loss of the PACA license and his income as principal and chief operating officer of Jacob's Corp., amounting to a loss of personal income of more than $100,000 per year; and the moneys Jacob has had to contribute in capital to Jacob's Corp. to make up for the diversion and misappropriation by Defendants over the past 9 years.

### V. Relief

44.   Jacob's Corp. is entitled to a judgment against each of the Defendants in an amount not less $1,000,000, the precise amount to be determined at trial;

45.   Jacob is entitled to a judgment against each of the Defendants in an amount not less $500,000, the precise amount to be determined at trial;

46.   Plaintiffs are entitled to a trebling of damages and attorney's fees and costs under § 4 of the Clayton Act, 15 U.S.C. 15(a).

47.   Plaintiffs are entitled to an injunction prohibiting each of the Defendants from representing to any seller, prospective seller, or PACA licensee or official or employee of any PACA licensee that any of the Defendants has any authority to act on behalf of either of the Plaintiffs.

48.   Plaintiffs are entitled to an accounting by each of the Defendants as to all assets of Jacob's Corp., including produce ordered by or for Jacob's Corp., whether or not authorized (the "Ordered Produce"); the gross proceeds of all sales of any of the Ordered Produce; all moneys or other property received by any of the Defendants relating to any Ordered Produce or any of the Plaintiff's PACA trust or other assets from January 1, 2005 to the present;

49.   Plaintiffs are entitled to an award of the moneys determined to be owed to the Plaintiffs by reason of the accounting;

50.   Plaintiffs are entitled to an order compelling Defendants to pay the full amount owed to suppliers or sellers as to each of the Unauthorized Transactions, including any unauthorized transactions not listed above.

51.   Plaintiffs are entitled to an order that Nick's Corp. turn over all of its assets to Jacob's Corp. by reason of the commingling of the Plaintiffs' trust fund assets with the assets of Nick's Corp.

52.   Plaintiffs are entitled to an order that Nick and Lana turn over the real property (i.e., Nick's Property) used as their home and office to the Plaintiffs by

reason of the commingling of the Plaintiff's trust fund and other assets and use of such commingled assets to make payments to maintain Nick's Real Property, and to an Order requiring turn over to Plaintiffs of the asset purchased with the $50,000 check No. 557 (dated 7/31/09) on the same commingling basis.

53.   Plaintiffs are entitled to an order that Nick and Lana turn over all their other assets, including the stock of Nick's Corp. to the Plaintiffs by reason of the commingling of the Plaintiffs' trust fund and other assets with the personal assets of Nick and Lana.

54.   Plaintiffs are entitled to an order that Monte and each of the John Doe Defendants #1-10 turn over all of their personal and business assets to the Plaintiffs by reason of the commingling of the Plaintiffs' trust fund and other assets with the personal assets of Monte (and, upon information and belief, Defendants John Doe ## 1-10).

55.   Plaintiffs are entitled to an award of pre-judgment interest at the rate of 9%.

56.   Plaintiffs are entitled attorney's fees and costs not covered by § 4 of the Clayton Act, 15 U.S.C. § 13.

# COUNT I

## (Misappropriation of PACA Trust Funds)

### Against All Defendants

57.   Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs.

58.   Defendants are liable to the Plaintiffs for unlawful misappropriation of the Plaintiffs' PACA trust fund and other assets.

59.   Plaintiffs are entitled to the relief set forth in ¶¶ 29 and 44-56 above.

# COUNT II

## Failure to Maintain PACA Trust
## 7 U.S.C. §§ 499e(c)(2), 499e(c)(4)

### (Against Nick's Corp.)

60.   Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs.

61.   Defendant Nick's Corp. is liable to the Plaintiffs for unlawful misappropriation of the Plaintiffs' PACA trust fund and other assets.

62.   Plaintiffs are entitled to the relief set forth in ¶¶ 29 and 44-56 above.

## COUNT III

### Dissipation of Trust Assets
### 7 U.S.C. §§ 499(b), 499e(c), 499e(c)(4)

### (Against All Defendants)

63.   Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs.

64.   Defendants are liable to the Plaintiffs for dissipation of the Plaintiffs' PACA trust fund assets.

65.   Plaintiffs are entitled to the relief set forth in ¶¶ 29 and 44-56 above.

## COUNT IV

### Failure to Pay Trust Funds
### 7 U.S.C. §§ 499(b)

### (Against Nick's Corp.)

66.   Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs.

67.   Defendants are liable to the Plaintiffs for the failure to pay PACA trust funds to the rightful owner of such funds, either the sellers in the Unauthorized Transactions or to Jacob's Corp. the trustee of such funds.

68.   Plaintiffs are entitled to the relief set forth in ¶¶ 29 and 44-56 above.

## COUNT V

### Breach of Fiduciary Duty / Non-Dischargeability
### 7 U.S.C. §§ 499b(4), 11 U.S.C. 523(a)

### (Against All Defendants)

69.   Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs.

70.   Upon information and belief, each of the Defendants managed, controlled and directed disposition of part or all of Plaintiffs' PACA trust asset.

71.   Upon information and belief, Defendants received, in the regular course of business, funds subject to the Plaintiff's PACA statutory trust which were not used for the payment of the outstanding invoices for Plaintiff Jacob's Corp.

72.   Upon information and belief, Defendants, in breach of their fiduciary obligations arising under PACA, directed the disbursement of trust funds for purposes other than making full and prompt payment to the persons entitled to such money as required by PACA, 7 U.S.C. § 499b(4), thereby heightening liability herein to a state of non-dischargeability pursuant to 11 U.S.C. § 523(a).

73.   As a direct result of the foregoing, each of the Defendants has violated the fiduciary duties as trustees in failing and refusing to make the payments required to satisfy the priority trust interests of the sellers in the Unauthorized Transactions and of the Plaintiff Jacob's Corp., as the lawful trustee of such PACA trust funds and, as a direct result, the Plaintiffs have suffered damages.

74.   Defendants are liable to the Plaintiffs for the failure to pay PACA trust funds to the rightful owner of such funds, either the sellers in the Unauthorized Transactions or to Jacob's Corp. the trustee of such funds.

75.   Plaintiffs are entitled to the relief set forth in ¶¶ 29 and 44-56 above.

## COUNT VI

## Interest and Attorney's Fees

### (Against All Defendants)

76.   Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs.

77.   Pursuant to PACA, 7 U.S.C. § 499e(c), and the Regulations promulgated thereunder, Defendants were statutorily required to maintain a trust in favor of the sellers (Unauthorized Transactions) and Plaintiff Jacob's Corp. (as PACA trustee).

78.   As a result of the failure of Defendants to maintain the trust and to make full payment promptly, the Plaintiffs haves been required to pay attorney's fees and costs in order to bring this action to compel payment of the trust res unlawfully held by the Defendants.

79.     As a result of the failure of Defendants to comply with their statutorily mandated duties to maintain the trust and make full payment promptly, the Plaintiffs have lost the use of said money.

80.     The Plaintiffs will not receive full payment as required by PACA, 7 U.S.C. § 499e(c), if the Plaintiffs must expend part of said payment on attorney's fees, and litigation costs, and also suffer the loss of interest on the outstanding amounts owed, all because of violations by Defendants of their statutory duties to maintain the trust and make full payment promptly.

81.     Defendant Nick's Corp. is liable to the Plaintiffs for payment of Plaintiffs' legal fees, litigation costs, and interest on the amounts owed.

## COUNT VII

### Creation of Common Fund

**(Against All Defendants)**

82.     Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs.

83.     The Plaintiffs are commencing this lawsuit on behalf of themselves and other similarly situated PACA trust creditors, and any and all monies recovered from Defendants and other third parties will be distributed on a pro-rata basis among the Plaintiff and all perfected PACA trust creditors joined to this lawsuit.

## COUNT VIII

### Fraudulent Transfers

#### (Against each of the Defendants)

84.   Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs.

85.   Upon information and belief, each of the Defendants transferred part of the Plaintiffs' PACA trust assets to themselves and to other unknown third parties.

86.   These transfers were made after the claims of Plaintiff and other PACA trust beneficiaries arose.

87.   These transfers were made to or for the benefit of the Defendants without consideration or adequate consideration.

88.   The PACA trustee (i.e., Jacob's Corp.) was unable to make payment to the sellers in the Unauthorized Transactions at the time of these transfers.

89.   At the time of these transfers, the Defendants as recipients of the PACA trust assets had reasonable cause to believe that the Company was unable to make payment to the sellers as alleged in the preceding paragraph.

90.   These transfers were fraudulent transfers as proscribed by New York's Uniform Fraudulent Transfers Act, New York's Debtor and Creditor Law, N.Y. CLS Dr & Cr § 1, *et seq.* (2007).

91.   Accordingly, Plaintiffs seek entry of an Order, as provided by N.Y. CLS D. & Cr § 273, avoiding the transfers, ordering the recipients to disgorge and transfer any and all such amounts to Plaintiff to the extent of $100,000, plus interest from the date each invoice for the Unauthorized Transactions became past due, costs, attorneys' fees, and awarding punitive damages to be determined by the trier of fact.

## COUNT IX

### Accounting

#### (Against each of the Defendants)

92.   Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs.

93.   Plaintiffs are entitled to an accounting from each of the Defendants as to all of the Plaintiffs PACA trust assets (whether produce or proceeds of sale, or other assets of the Plaintiffs) and for an accounting as to the commingling of such PACA trust assets with the business, trust-fund or personal assets of each of the Defendants.

94.   Plaintiffs are entitled to the relief set forth in ¶¶ 29, 48-49 and 51-54 above.

## PRAYER

**WHEREFORE,** the Plaintiff prays that this Court issue an Order:

1.    As to **Count I**, granting the relief requested in ¶¶ 29 and 44-56 above;

2.    As to **Count II**, granting the relief requested in ¶¶ 29 and 44-56 above;

3.    As to **Count III**, granting the relief requested in ¶¶ 29 and 44-56 above;

4.    As to **Count IV**, granting the relief requested in ¶¶ 29 and 44-56 above;

5.    As to **Count V**, granting the relief requested in ¶¶ 29 and 44-56 above;

6.    As to **Count VI**, granting the relief requested in ¶ 81 above;

7.    As to **Count VII**, granting the relief requested in ¶ 83 above;

8.    As to **Count VIII**, granting the relief requested in ¶ 91 above;

9.    As to **Count IX**, granting the relief requested in ¶¶ 94, 29, 48-49 and 51-54 above; and

10.   As to **all Counts**, Such other and further relief, whether in law or in equity, as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a jury trial as to all issues triable by right to a jury.

Dated:  New York, New York
        July 2, 2014

                              Respectfully submitted,


                              Carl E. Person   (CP 7637)
                              *Attorney for the Plaintiffs,*
                                  *Jacob's Village Farm Corp.*
                                  *and Jacob Yusifov*
                              225 E. 36th Street - Suite 3A
                              New York, New York 10016-3664
                              (212) 307-4444