UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JACOB'S VILLAGE FARM CORP., et al.

                    Plaintiffs,            **MEMORANDUM & OPINION**

            - against -            Case No. 14 CV 4109 (PKC)

NAUM YUSIFOV, et al.

                    Defendants.
--------------------------------------------------------X

PAMELA K. CHEN, United States District Judge:

      This action for relief under the federal Perishable Agricultural Commodities Act ("PACA") and New York law is the latest salvo in an ongoing dispute between two brothers and their produce businesses in Brooklyn, New York. Jacob's Village Farm Corp. and its proprietor, Jacob Yusifov, bring suit against Defendants Naum Yusifov a/k/a Nick Yusifov, Lana Yusifov a/k/a Svetlana Beyn, Nick's Produce Corp., John Montes a/k/a John Ruiz Montes, and John Does 1–10. In a nine-count Complaint, Plaintiffs allege that Defendants misappropriated and diverted funds and assets from Plaintiffs' PACA trust beginning on an unknown date during or after 2005, but at least since 2009.

      Plaintiffs' Complaint alleges four causes of action under PACA, and five causes of action under New York law. Defendants move to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), arguing that the Court lacks subject matter jurisdiction over this action because Plaintiffs have failed to state a valid claim under PACA. Defendants urge the Court to dismiss Plaintiffs' federal claims and decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

For the reasons stated below, the Court grants Defendants' Motion to Dismiss in its entirety.

I.   BACKGROUND AND FACTS

The following facts are drawn from the allegations in Plaintiffs' Complaint.

A.   Parties

Plaintiff Jacob's Village Farm Corp. ("Jacob's Village") is a New York corporation located in Brooklyn, New York. (Dkt. 1, Complaint ("Compl."), ¶ 5.) Jacob's Village is a PACA-licensed dealer and wholesaler. (Compl., ¶ 5.) It buys and resells wholesale quantities of perishable agricultural commodities[1] in interstate commerce. (Compl., ¶ 6.)

Plaintiff Jacob Yusifov ("Jacob") is the sole shareholder and a principal of Jacob's Village. (Compl., ¶ 7.) A native speaker of Russian and Hebrew, Jacob has limited English proficiency, and therefore has relied on his brother and sister-in-law to translate produce orders, communicate with suppliers and customers in English, write checks, make wire transfers, and maintain the books and records for Jacob's Village. (Compl., ¶ 7.)

Defendants Naum Yusifov, also known as Nick Yusifov ("Nick"), and Lana Yusifov, also known as Svetlana Beyn ("Lana"), are Jacob's brother and sister-in-law, respectively. (Compl., ¶¶ 8, 12.) Nick and Lana reside in Brooklyn, New York. (Compl., ¶¶ 8, 12.) Plaintiffs allege that, by virtue of his activities on behalf of Jacob's Village, Nick was an unauthorized principal and fiduciary of the Jacob's Village PACA trust and its other assets. (Compl., ¶ 8.) Lana assisted Nick in carrying out such tasks for Jacob's Village. (Compl., ¶ 12.)

Defendant Nick's Produce Corp. ("Nick's Produce") is a New York corporation, incorporated by Nick and Lana in July 2013. Nick's Produce became a PACA licensee on

---

[1]   The Court will use the term "produce" to refer to perishable agricultural commodities.

2

August 8, 2013, with Nick as its principal. (Compl., ¶¶ 9–11.) Plaintiffs allege that, from August 2013 on, Defendants financed Nick's Produce with produce and funds misappropriated from the Jacob's Village PACA trust and other assets. (Compl., ¶ 9.)

Defendant John Montes ("Montes") resides in Florida. Montes was an employee of Nick's Produce. Plaintiffs allege that Montes falsely represented himself as a broker and agent for Jacob's Village. (Compl., ¶¶ 13–14.)

Plaintiffs also name John Does 1–10 defendants, alleging that additional individuals, unknown to Plaintiffs at this time, participated in Defendants' scheme to misappropriate Plaintiffs' funds and produce. (Compl., ¶ 15.)

### B. Relevant Facts

Jacob started Jacob's Village in February 2005. (Compl., ¶ 16.) It first received its PACA license either in 2005 or 2009.[2] Its current PACA license was issued on April 24, 2012 (No. 20120907), in the name of Jacobs Village Farm Corp. ("Jacobs"[3]). (Compl., ¶ 18.) Plaintiffs specifically allege that Jacob's Village is a PACA dealer in interstate commerce. (Compl., ¶ 19.) In compliance with its PACA obligations, Jacob's Village had a moving (*i.e.*, non-segregated) trust fund, where it commingled the produce it received with the proceeds from its sales and resale of produce.[4] (Compl., ¶ 20.)

---

[2] The Complaint contains conflicting information on whether Jacob's Village first received its PACA license in 2005 or 2009. (*See* Compl., ¶ 18 (stating Jacob's Village received its first PACA license in 2005); *id*., ¶ 6 (alleging Jacob's Village "has been a licensed PACA dealer since 2009).) The exact date of when Jacob's Village first received its PACA license, however, is not relevant to this Court's resolution of Defendants' motion to dismiss.

[3] As recorded in the PACA license, Jacobs does not have an apostrophe.

[4] PACA provides that "[p]erishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, *and* all inventories of food or other products derived from perishable agricultural commodities, *and* any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker

3

Due to Jacob's limited English proficiency, Nick and Lana assisted Jacob in certain business activities. This assistance included reading and orally translating commercial documents, ordering produce from suppliers or through produce brokers in accordance with Jacob's verbal instructions, instructing suppliers and shippers where ordered produce was to be shipped, writing checks to suppliers and brokers, receiving Jacob's Village bank statements, and maintaining the books and records for Jacob's Village. (Compl., ¶¶ 21–22.) Nick and Lana performed these activities without compensation or interest in the business, and Plaintiffs estimate Nick spent 1–2 hours per week on these activities. (Compl., ¶ 25.)

Plaintiffs allege that at an unknown point in time between 2005 and July 31, 2009, Nick and Lana began diverting and misappropriating Jacob's Village PACA trust fund assets and other assets of the Plaintiffs through the unauthorized issuance of checks and wire transfers to Nick and Lana. (Compl., ¶ 28.) Jacob learned of Nick and Lana's alleged scheme in June 2013 after reviewing a bank statement that showed unauthorized checks and wire transfers to Nick and Lana amounting to more than $500,000. (Compl., ¶ 29.) Plaintiffs allege that the diverted funds came from the Jacob's Village PACA trust fund and other Jacob's Village assets. (Compl., ¶ 29.)

After making this discovery, Jacob closed the Jacob's Village bank account and opened a new bank account. (Compl., ¶ 32.) However, Plaintiffs allege that Defendants then either began or continued to make unauthorized orders of produce in the name of Jacob's Village, with delivery to Nick's Corp. or to others for Defendants' benefit. (Compl., ¶ 33.) Plaintiffs allege that these unauthorized orders led produce sellers to falsely believe that Jacob's Village ordered

---

in trust for the benefit of all unpaid suppliers or sellers [.]" 7 U.S.C. § 499e(c)(2) (emphasis added).

4

the produce. (Compl., ¶ 34.) When some sellers did not receive payment from Jacob's Village, they filed PACA complaints against Jacob's Village and brought suit. (Compl., ¶¶ 34–36.)

Plaintiffs claim a total loss and damages to Jacob's Village in excess of $1,000,000, and a loss to Jacob consisting of personal income of more than $100,000 and an unspecified amount of capital that Jacob contributed to Jacob's Village. (Compl., ¶¶ 42–43.)

### C. Procedural History

Plaintiffs filed this action on July 2, 2014. Their nine-count Complaint pleads four causes of action under PACA, and five causes of action under New York law. On November 5, 2014, Defendants moved to dismiss the Complaint pursuant to FRCP 12(b)(1) and 12(b)(6). (Dkt. 13.)

## II. STANDARD OF REVIEW

### A. FRCP 12(b)(1)

FRCP 12(b)(1) provides for the dismissal of a claim for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When evaluating a motion to dismiss under FRCP 12(b)(1), the Court must determine whether the defendant challenges "the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001). Where the defendant challenges the legal sufficiency of the plaintiff's jurisdictional allegations, the Court takes all facts alleged in the complaint as true, and draws all reasonable inferences in favor of the plaintiff. *Id*. (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000) (quotation marks omitted); *see also Doyle v. Midland Credit Mgmt., Inc.*, No. 11 CV 5571, 2012 WL 5210596, at *1 (E.D.N.Y. Oct. 23, 2012) (noting that a defendant's "facial challenge" to the complaint "contests the legal sufficiency of the plaintiff's jurisdictional allegations[.]"), *aff'd*, 722 F.3d 78 (2d Cir. 2013). Where the defendant disputes the accuracy of

the facts alleged in the Complaint, the Court may consider evidence outside the pleadings relevant to the jurisdictional question in deciding the motion. *Id*. (citing *Robinson*, 269 F.3d at 140).

Here, Defendants' motion consists of a facial challenge, contesting the legal sufficiency of Plaintiffs' PACA claims. As such, the Court takes all facts alleged in the complaint as true, and draws all reasonable inferences in favor of Plaintiffs.[5]

**B.     FRCP 12(b)(6)**

FRCP 12(b)(6) provides for the dismissal of a complaint for a plaintiff's failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating a 12(b)(6) motion to dismiss, a district court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). However, the Court is "'not required to credit conclusory allegations or legal conclusions couched as factual allegations.'" *Id*. (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)).

The liberal notice pleading standard of Rule 8(a) only requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 U.S. at 555. Under Rule 8(a)(2), the complaint need not set forth "detailed factual allegations," but the plaintiff must present "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A complaint that "tenders 'naked

---

[5]     Essentially, the Court applies the same standard of review as under FRCP 12(b)(6). *See Lerner v. Fleet Bank*, 318 F.3d 113, 128 (2d Cir. 2003) (noting that the distinction between a dismissal for lack of subject matter jurisdiction and one for failure to state a claim "rarely has practical consequences, because the standards . . . are substantively identical.").

6

assertion[s]' devoid of 'further factual enhancement'" will not suffice.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 555 U.S. at 557).  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"  *Twombly*, 550 at 555.  A complaint should be dismissed where the plaintiffs have not "nudged their claims across the line from conceivable to plausible[.]"  *Id.* at 570.

Attached to Defendants' motion to dismiss are documents extrinsic to the Complaint.  (*See* Dkts. 14–4, 14–5.)  Though the protective orders at issue are matters of public record, for which the Court may take judicial notice, the Court does not consider them because they are irrelevant to Plaintiffs' PACA claims.  The Court likewise does not consider Jacob's affidavit responding to Defendants' exhibits because it is also irrelevant to the issues raised by Defendants' motion.  (*See* Dkt. 15–1.)

## III.  DISCUSSION

Plaintiffs' Complaint alleges that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and § 1367(a) (supplemental jurisdiction). Plaintiffs allege four claims under PACA, 7 U.S.C. § 499a *et seq.*, and five claims under New York law.[6]  In moving to dismiss pursuant to FRCP 12(b)(1) and 12(b)(6), Defendants argue that the Court lacks subject matter jurisdiction because Plaintiffs have failed to state a valid claim under PACA.  (Def. Memo at ECF 10–15.)[7]  They further urge the Court to decline to exercise supplemental jurisdiction over Plaintiffs' state claims.  (Def. Memo at ECF 20.)

---

[6] Plaintiffs' Complaint makes reference to the federal Robinson-Patman Act (Compl., ¶¶ 2, 38), but does not allege any causes of action under Robinson-Patman.  Plaintiffs' opposition clarifies that their complaint does not state a cause of action under Robinson-Patman (Pl. Opp. at ECF 19), and so Plaintiffs withdraw without prejudice the allegation that jurisdiction in the action is based in part on Robinson-Patman (*id.*).

[7] Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

Thus, for this Court to have subject matter jurisdiction over Plaintiffs' action, it must find that Plaintiffs have successfully stated a claim under PACA, or that in the absence of a valid federal claim, it is proper for the Court to exercise its supplemental jurisdiction over Plaintiffs' state law claims.[8] The Court begins by examining Plaintiffs' PACA claims.

## A. Background on PACA

"Congress enacted PACA in 1930 to regulate the interstate sale and marketing of perishable produce." *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 241 (2d Cir. 2006) (citing H.R. Rep. No. 98–543, at 3 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 406; *Am. Banana Co., Inc. v. Republic Nat'l Bank of New York*, 362 F.3d 33, 36 (2d Cir. 2004)). Its regulatory scheme requires the licensing of all entities who qualify as commission merchants, dealers and brokers under the statute, and bars a variety of unfair trade practices by those parties. *See* 7 U.S.C. §§ 499b, 499c.

In 1984, Congress amended PACA "by adding Section 499e(c), which requires licensed dealers to hold all perishable commodities purchased on short-term credit, as well as sales proceeds, in trust for the benefit of unpaid sellers." *Am. Banana Co.*, 362 F.3d at 37 (citing 7 U.S.C. § 499e(c)(2)). PACA "defines the corpus of the trust as all produce received from sellers, including 'all inventories of food or other products derived from' the produce, 'and any receivables or proceeds from the sale of such' produce or its derivative products." *R Best Produce*, 467 F.3d at 241 (citing 7 U.S.C. § 499e(c)(2)). "The purpose of the trust is 'to increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received by them.'" *Id*. (quoting H.R. Rep. No. 98–543, at

---

[8] Diversity jurisdiction does not apply because all parties are citizens of New York. (Compl., ¶¶ 5, 7, 8, 10, 12.)

8

2 (1983)). PACA trusts are governed by general principles of trust law "unless such law directly conflicts with the PACA statute." *D.M. Rothman & Co. v. Korea Commercial Bank of New York*, 411 F.3d 90, 94 (2d Cir. 2005).

Thus, as the Second Circuit has recognized, "the legislative history and the text of [PACA] as well as the implementing regulations all make clear that trust assets are intended exclusively to benefit produce suppliers." *R Best Produce*, 467 F.3d at 242 (citing *Am Banana Co.*, 362 F.3d at 38). To that end, PACA provides a private right of action to trust beneficiaries seeking to enforce payment from the trust. 7 U.S.C. § 499e(c)(5) ("The several district courts of the United States are vested with jurisdiction specifically to entertain (i) actions by trust beneficiaries to enforce payment from the trust, and (ii) actions by the Secretary to prevent and restrain dissipation of the trust.").

### B. Count Two, Failure to Maintain PACA Trust

In Count Two of the Complaint, Plaintiffs allege that Defendant Nick's Corp. is liable under 7 U.S.C. §§ 499e(c)(2), 499e(c)(4) for misappropriation of the Plaintiffs' PACA trust fund and other assets. (Compl., ¶¶ 60–62.) Defendants argue that Plaintiffs cannot sue under Section 499e(c) because they are not beneficiaries of the PACA trust. (Def. Memo at ECF 10.) Plaintiffs acknowledge that their theory of recovery presents a "case of first impression" but urge the Court to imply a cause of action for PACA trustees to sue to enforce the trust. (*See* Pl. Opp. at ECF 6.) As discussed below, the Court finds that Plaintiffs' misappropriation claim fails to state a claim under PACA, and rejects Plaintiffs' argument that the Court should imply a private right of action that would allow Plaintiffs to sue in their capacity as PACA trustees.

### 1. Whether Plaintiffs' Misappropriation Claim States A Claim Under PACA

The two PACA provisions cited by Plaintiffs in Count Two govern the PACA trust. Section 499e(c)(2) provides: "[p]erishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers . . . ." 7 U.S.C. § 499e(c)(2). Section 499e(c)(4) regulates the licensee's billing or invoice statements "to provide notice of the licensee's intent to preserve the trust" and states that "[t]he seller of these commodities retains a trust claim over these commodities . . . until full payment is received." 7 U.S.C. § 499e(c)(4).

PACA's provision setting forth a private right of action extends only to trust beneficiaries. 7 U.S.C. § 499e(c)(5); *see also Am Banana Co.*, 362 F.3d at 38; *Sweet Ones, Inc. v. Mercantile Bank of Mich.*, No. 09 CV 1092, 2010 WL 1658205, at *2 (W.D. Mich. Apr. 23, 2010) (noting PACA "does not expressly provide for enforcement by persons other than trust beneficiaries and the Secretary of Agriculture."). Thus, for Plaintiffs to successfully state a claim in Count Two of the Complaint, they must plausibly allege that they are beneficiaries of the PACA trust—that is, that they are produce suppliers or sellers of perishable agricultural commodities. *See R Best Produce*, 467 F.3d at 242 (citing *D.M. Rothman*, 411 F.3d at 93; *Am. Banana*, 362 F.3d at 38); *see also* 7 U.S.C. § 499e(c)(2) (noting that a dealer of perishable agricultural commodities shall hold such commodities "in trust *for the benefit of all unpaid suppliers or sellers*.") (emphasis added).

Plaintiffs' problem, however, is that they seek to vindicate their interests as PACA trustees, not as trust beneficiaries. The Complaint plainly avers that Jacob's Village is a PACA

10

trustee, that Jacob's Village is a PACA-licensed dealer that buys wholesale quantities of produce in interstate commerce, that Jacob is the sole shareholder and principal of Jacob's Village, and spent his full time working in the PACA wholesale produce business of Jacob's Village, and that Jacob's Village maintained a PACA trust. (Compl., ¶¶ 5-7, 18-20, 24, 67 (referring to Jacob's Village as trustee), 73 (same as ¶ 67).) Nowhere in the Complaint do Plaintiffs allege that Jacob's Village is a beneficiary of its own trust, nor can it. Indeed, Plaintiffs' opposition papers concede that they do not seek to vindicate their interests as PACA trust beneficiaries. (*See* Pl. Opp. at ECF 6 ("this is a case of first impression on the issue of whether a PACA trustee (i.e. purchaser) has any right under PACA to enforce its duties to protect and preserve the PACA trust assets.")).

In an attempt to save their claim, Plaintiffs argue that the Complaint plausibly alleges that they are resellers to Nick's Corp., and therefore may maintain a PACA claim against Nick's Corp. for produce Nick's Corp. diverted from Jacob's Village. (Pl. Opp. at ECF 8.) While such allegations might support a claim against Nick's Corp., such a claim would have to seek recovery as beneficiaries of the Nick's Corp. PACA trust. Here, however, Count Two specifically states that Nick's Corp. "is liable to the Plaintiffs for unlawful misappropriation *of the Plaintiffs' PACA trust fund* and other assets." (Compl., ¶ 61 (emphasis added).) Because Plaintiffs seek to vindicate an interest in their own PACA trust, their "reseller" theory does not save Count Two of the Complaint.

    2. <u>Whether PACA Implies a Private Right of Action to a PACA Trustee</u>

Plaintiffs further argue that the Court should imply a private right of action that would allow a PACA trustee to enforce its duty to preserve the trust assets. (Pl. Opp. at ECF 14–16.) Defendants argue that PACA does not authorize trustees to enforce the trust provisions in

11

Section 499e(c). (Def. Memo at ECF 13–14.) The Court agrees with Defendants, and finds that PACA does not imply a private right of action for Plaintiffs to sue to enforce duties of a PACA trustee.

"'Private rights of action to enforce federal law must be created by Congress.'" *Republic of Iraq v. ABB AG*, 768 F.3d 145, 170 (2d Cir. 2014) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)). A federal statute may create a private right of action "expressly or, more rarely, by implication." *Id*. The Second Circuit recently noted that "'the Supreme Court has come to view the implication of private remedies in regulatory statutes with increasing disfavor.'" *Id*. (quoting *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613, 618 (2d Cir. 2002)).

In considering whether a statute implies a private right of action, the Court interprets the statute to determine whether it "displays an intent to create not just a private right but also a private remedy." *Id*. (citing *Alexander*, 532 U.S. at 286). The Court first looks to the text and structure of the statute, and also considers the four factors enumerated in *Cort v. Ash* ("*Cort*"). *Id*. (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)). Under the *Cort* factors, the Court examines whether: (1) the plaintiff is one of the class for whose special benefit the statute was enacted; (2) there is any indication of legislative intent, explicit or implicit, to create a remedy in favor of the plaintiff or to deny one; (3) an implied private right of action is consistent with the underlying purposes of the legislative scheme; and (4) the cause of action is one not traditionally relegated to the States. *See Conboy v. AT&T Corp.*, 241 F.3d 242, 252 (2d Cir. 2001) (citing *Cort*, 422 U.S. 66, 78 (1975)). Though there are four factors, the critical factor is that of legislative intent. *See Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011) ("'[s]tatutory intent . . . is determinative, because [w]ithout it, a cause of action does not exist and courts may not create

one, no matter how desirable that might be as a policy matter, or how compatible with the statute." (quoting *Alexander*, 532 U.S. at 288)); *Jordan v. Chase Manhattan Bank*, No. 13 CV 9015, 2015 WL 1000058, at *5 (S.D.N.Y. Mar. 6, 2015) (noting the critical issue is the second *Cort* factor of legislative intent) (citing *N.Y. City Envtl. Justice All. v. Giuliani*, 214 F.3d 65, 73 (2d Cir. 1999)).

Here, the text and the structure of PACA plainly demonstrate that Congress did not intend for PACA trustees to have a federal private right of action to enforce duties associated with the PACA trust. First, Section 499e(c)(5) explicitly provides a private right of action to trust *beneficiaries* to sue to enforce payment from the trust. *See* 7 U.S.C. § 499e(c)(5). The statute's limitation of access to the federal courts to trust beneficiaries, and not PACA trustees, suggests that Congress "did not intend to otherwise allow access to federal courts under the statute." *Lopez*, 662 F.3d at 598 (citing *Alexander*, 532 U.S. at 290)); *see also M.F. v. State of New York Exec. Dep't Div. of Parole*, 640 F.3d 491, 496 (2d Cir. 2011) (interpreting interstate agreement to exclude plaintiff's cause of action because the agreement's dispute-resolution mechanism was limited to "disputes either between compacting states or between a state and the Interstate Commission"); *Ruotolo v. Fannie Mae*, 933 F. Supp. 2d 512, 524 (S.D.N.Y. 2013) (finding that Congress' creation of a right of action against the Secretary of the Treasury "strongly implies that Congress did *not* wish to create a right of action against the recipients of federal funds" (citing *Thomas v. Pentagon Fed. Credit Union*, 393 F. App'x 635, 638 (11th Cir. 2010) (emphasis in original)).

Second, PACA's trust provision evinces Congress' intent to establish the trust for the benefit of unpaid produce suppliers, sellers or agents, *not* buyers or PACA trustees like Plaintiffs. The title of the provision specifically states as much: the PACA trust is "for the

13

benefit of unpaid suppliers, sellers or agents". *See* 7 U.S.C. § 499e(c). And the subsection establishing the trust states that the "commission merchant, dealer, or broker" shall hold perishable agricultural commodities "in trust *for the benefit of all unpaid suppliers or sellers* of such commodities." 7 U.S.C. § 499e(c)(2) (emphasis added).

Indeed, the Second Circuit itself has recognized that Congress enacted the PACA trust provision to protect unpaid sellers and suppliers. *R Best Produce*, 467 F.3d at 241 ("To relieve the burden on sellers, Congress amended PACA in 1984 by adding [Section] 499e(c), which requires dealers . . . to hold sales proceeds in trust for the benefit of all unpaid suppliers or sellers of such commodities."); *see also* H.R. Rep. No. 98–543, at 2 (1983) (stating the purpose of the trust is "to increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities").

The Court finds that nothing in Section 499e(c) suggests that Congress enacted PACA's trust provision for the benefit of PACA trustees and dealers, or that Congress intended to create a remedy for PACA trustees and dealers to enforce duties associated with the trust. Plaintiffs themselves concede as much. (Pl. Opp. at ECF 10 ("The PACA statute does not mention any rights of the PACA trustee to enforce [the statute]".)

Accordingly, having resolved the issue of Congressional intent with respect to PACA, the Court need not consider the remaining *Cort* factors. *See Merrill Lynch v. Curran*, 456 U.S. 353, 388 (1982) ("In view of our construction of the intent of the Legislature there is no need for us to 'trudge through all [*Cort*] factors when the dispositive question of legislative intent has been resolved.'" (quoting *California v. Sierra Club,* 451 U.S. 287, 302 (1981) (Rehnquist, J.,

concurring)).[9]  The Court thus finds that PACA does not imply a private right of action for trustees to enforce duties associated with the trust.  *Accord Sweet Ones v. Mercantile Bank of Mich.*, No. 09 CV 1092, 2010 WL 1658205 (W.D. Mich. Apr. 23, 2010) (rejecting an implied private right of action for PACA buyers).[10]

### 3. Dismissal of Count Two

Having found that Plaintiffs have failed to plausibly allege that they are PACA trust beneficiaries, and that PACA does not imply a private right of action for trustees, the Court finds that Count Two of the Complaint fails to state a claim.

### C. **Count Three, Dissipation of Trust Assets**

Count Three of the Complaint alleges that all Defendants are liable to Plaintiffs "for dissipation of the Plaintiffs' PACA trust fund assets" under 7 U.S.C. §§ 499b, 499e(c), and 499e(c)(4).  (Compl., ¶ 64.)  The theory underlying Count Three seems to be that Plaintiffs, who are PACA trustees, have a cause of action against individuals and entities who Plaintiffs allege were in a position to control the assets of the Jacob's Village PACA trust.  Having found above that Plaintiffs cannot plausibly allege a cause of action as PACA trustees under Section 499e(c), the Court dismisses the portion of Count Three pled under that statutory provision.  Thus, the Court considers below whether Plaintiffs have plausibly alleged a claim pursuant to Section 499b.

---

[9]  Though the Court need not "trudge through all [of the *Cort*] factors", it is worth noting that the fourth *Cort* factor is particularly relevant in this case, given the misconduct alleged by Plaintiffs.  This is essentially a theft case, which *is* a cause of action traditionally relegated to the States.  *See Conboy*, 241 F.3d at 252 (citing *Cort*, 422 U.S. at 78).

[10]  As the *Sweet Ones* court recognized, while "PACA creates a trust in favor of produce sellers," it does not "explicitly vest buyers . . . with the power of a trustee."  2010 WL 1658205 at *4.  "Indeed, a buyer under PACA does not have the kind of undivided loyalty to PACA trust beneficiaries that a traditional trustee has to beneficiaries of a trust."  *Id*.

15

Section 499(b) governs unfair conduct and trade practices by a commission merchant, dealer or broker. 7 U.S.C. § 499b. Several of its provisions prohibit commission merchants, dealers or brokers from engaging in deceptive conduct not relevant to this case.[11] Relevant to Plaintiffs' allegations in Count Three, Section 499(b)(4) prohibits commission merchants, dealers, or brokers "to fail to maintain the trust as required under section 499e(c) of this title." *See* 7 U.S.C. § 499(b)(4). A commission merchant, dealer, or broker who violates Section 499(b)(4) is "liable to the persons or persons injured thereby." 7 U.S.C. § 499e(a). Under Section 499e(b), the injured party may enforce the commission merchant's liability by complaint to the Secretary of Agriculture or "by suit in any court of competent jurisdiction," but the private right of action set forth in this section does not "abridge or alter the remedies now existing at common law or by statute, and the provisions of this chapter are in addition to such remedies." 7 U.S.C. § 499e(b).

To the extent Plaintiffs look to Sections 499(b) and 499e(b) to provide them with a cause of action against Defendants, the Court rejects such a reading of these provisions because it would create a cause of action not available to Plaintiffs under Section 499e(c).[12] The "whole act" rule of statutory construction requires that "a statutory provision be 'interpret[ed] . . . in a way that renders it consistent with the tenor and structure of the whole act or statutory scheme of which it is a part.'" *In re U.S. for Orders (1) Authorizing Use of Pen Registers & Trap & Trace Devices*, 515 F. Supp. 2d 325, 334 (E.D.N.Y. 2007) (quoting *United States v. Pacheco,* 225 F.3d 148, 154 (2d Cir. 2000) (citations and quotation marks omitted)). Were the Court to read

---

[11] *See id.* at §§ 499(b)(1) (prohibiting practices such as deceptive weighing or counting of produce); 499(b)(2) (prohibiting commission merchants from discarding, dumping or destroying produce received without reasonable cause; 499(b)(5) (prohibiting misrepresentation of the character, kind, grade, quality, quantity or size of produce).

[12] Neither Plaintiffs nor Defendants specifically addressed Section 499e(b) in their briefing.

Sections 499(b) and 499e(b) to allow Plaintiffs, who are not beneficiaries of the PACA trust, to sue Defendants for an alleged dissipation of Plaintiffs' PACA trust, such a reading would be inconsistent with PACA's limitation of a private right of action to trust beneficiaries.

Nor does the legislative history of Section 499(b) support a cause of action for Plaintiffs, as trustees, to sue Defendants for dissipation of the Plaintiffs' PACA trust. When Congress amended Section 499(b) to make unlawful "the failure of any commission merchant, dealer, or broker to maintain the trust," it specifically noted that such a duty was "for the benefit of the seller-supplier as required under [Section 499e(c)]." *See* H.R. Rep. 98–543 at 7.

Thus, Plaintiffs may not rely on Section 499(b) to provide them with a cause of action, as PACA trustees, to sue Defendants for dissipation of the Plaintiffs' PACA Trust. The Court dismisses Count Three of the Complaint for failure to state a claim under Section 499(b).

### D. Remaining PACA Claims Pled under Section 499b

Count Four of the Complaint, which is pled under Section 499b, alleges that "Plaintiffs are liable to the Plaintiffs for failure to pay PACA trust funds to the rightful owner of such funds, either the sellers in the Unauthorized Transactions or to Jacob's Corp. the trustee of such funds." (Compl., ¶ 67.) Count Five of the Complaint, which is pled under Section 499(b)(4), alleges that "Defendants violated the[ir] fiduciary duties as trustees in failing and refusing to make payments required to satisfy the priority trust interests of the sellers in the Unauthorized Transactions and of the Plaintiff Jacob's Village, as the lawful trustee of such PACA trust funds." (Compl., ¶ 73.)

Having found above that Plaintiffs may not rely on Section 499(b) to bring a cause of action against Defendants for any duties Defendants are alleged to have had with respect to Plaintiffs' PACA trust, the Court dismisses Counts Four and Five for failure to state a claim.

### E. State Law Claims

The remaining claims in Plaintiffs' Complaint are all pled under New York law. Plaintiffs' Complaint alleges five state law causes of action: (1) misappropriation; (2) interest and attorney's fees; (3) creation of [a] common fund to pay Plaintiffs and other similarly situated PACA trust creditors; (4) fraudulent transfers; and (5) accounting. (Compl., ¶¶ 57–59, 76–94.)

Where, as here, any federal "claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n.7 (1988); *see also Oneida Indian Nation of New York v. Madison Cnty.,* 665 F.3d 408, 437 (2d Cir. 2011) ("we have repeatedly said that if a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well.") (citation and quotation marks omitted); 28 U.S.C. § 1367(c)(3) ("district courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction)." At the end of the day, this is a State law case alleging theft with respect to non-diverse parties. There is no reason for the Court to exercise jurisdiction over this matter. Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state law claims, and dismisses them without prejudice to being brought in State court. *See Oneida Indian Nation,* 665 F.3d at 439–40.

## IV. CONCLUSION

The Court grants Defendants' Motion to Dismiss the Complaint.[13] Plaintiffs' PACA claims are dismissed for failure to state a claim under FRCP 12(b)(6), and the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. The Clerk of the Court is respectfully requested to terminate this case.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: September 28, 2015
Brooklyn, New York

---

[13] Plaintiffs suggest that they may wish to amend the Complaint after obtaining discovery of kickbacks that might support their voluntarily withdrawn Robinson-Patman claim. (Pl. Opp. at ECF 19.) However, the Court does not have any obligation to address such inchoate requests to amend the Complaint. *See Porat v. Lincoln Towers Cmty. Ass'n,* 464 F.3d 274, 276 (2d Cir. 2006) (finding no abuse of discretion where district court, in dismissing plaintiff's case, did not explicitly address plaintiff's informal request to amend the complaint; "[a] counseled plaintiff is not necessarily entitled to a remand for repleading whenever he has indicated a desire to amend his complaint, notwithstanding the failure of plaintiff's counsel to make a showing that the complaint's defects can be cured.") (citing *In re Tamoxifen Citrate Antitrust Litig.,* 466 F.3d 187, 220 (2d Cir. 2006) ("It is within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss."), *abrogated on other grounds by FTC v. Actavis*, 133 S. Ct. 2223 (2013)).

19